

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-12-2009

# Simon-Simon v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-4159

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Simon-Simon v. Atty Gen USA" (2009). *2009 Decisions.* Paper 2056.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/2056

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-4159
_____

ISIDRO SIMON-SIMON,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

On a Petition for Review of an Order
of the Board of Immigration Appeals
(Agency No. A97-956-814)
Immigration Judge:  Daniel Meisner

_____

Submitted under Third Circuit LAR 34.1(a)
November 12, 2008


Before:  MCKEE, NYGAARD and ROTH, <u>Circuit Judges</u>

(Opinion filed : January 12, 2009)

_____

O P I N I O N
_____

PER CURIAM:

Petitioner Isidro Simon-Simon, a native and citizen of Guatemala, entered the United States without inspection on an unknown date. He was employed by Allied Hotel Renovations, Inc., and working to renovate a Marriott Hotel in Panama City, Florida, when he came to the attention of immigration authorities. Simon-Simon was served with a Notice To Appear on November 16, 2004, alleging that he was removable under Immigration & Nationality Act ("INA") § 212(a)(6)(A)(i), 8 U.S.C. § 1182 (a)(6)(A)(i), as an alien present in the United States without being admitted or paroled. He appeared before the Immigration Judge, conceded that he was removable, and applied for cancellation of removal under INA § 240A(b)(1), 8 U.S.C. § 1229b(b)(1), for certain non-permanent residents.[1] Simon-Simon contended that his removal would present an exceptional and extremely unusual hardship to his two United States citizen children, who would suffer economic and educational harm in Guatemala.

At his removal hearing, Simon-Simon testified that he married Elia Rivera in Guatemala in May 1986. She gave birth to their daughter, Mildred, and mother and child remain in Guatemala. The couple divorced in November 2005. Since 2003, Simon-Simon

---

[1] Cancellation of removal under INA § 240A(b)(1) is available to an alien who has been physically present in the United States for at least 10 years, has been a person of good moral character, has not been convicted of a specified criminal offense, and has established that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a United States citizen or lawful permanent resident. Id. at § 1229b(b)(1)(A)-(D).

2

has lived with Anna Maria Bonilla, a legal permanent resident, in New Jersey. He and Bonilla have a United States-born child, David, who was 14 months old. Simon-Simon also has a 7 year-old son, Isael, from a prior relationship with Rosalinda Garcia Perez. He was granted sole custody of this United States citizen child by a New Jersey Family Court judge. Simon-Simon testified that Isael's mother is unfit. She has an alcohol problem and has left Isael with "strange people" while she goes out drinking and dancing. On one occasion it appeared that Isael had been beaten, and he did not want to return to his mother. Isael had problems before coming to live with Simon-Simon, but he is now stable and happy. The Custody Order prohibits Isael's removal from the United States without the consent of both parents. Normally, Simon-Simon earns $45,000 annually. Bonilla is unemployed and stays home to care for the children. She also has a son from a prior relationship, giving the couple three children to support and care for. Simon-Simon is a stable role model for all three boys, and not just Isael. Simon-Simon is from a large family; all but one of his nine brothers and sisters live in Guatemala, as do his parents.

On January 20, 2006, the IJ denied Simon-Simon's application for cancellation of removal on the ground that he failed to meet the physical presence requirement. In addition, after referring to In re: Monreal- Aguinaga, 23 I. & N. Dec. 56 (BIA 2001), In re: Andazola-Rivas, 23 I. & N. Dec. 319 (BIA 2002), and In re: Gonzalez-Recinas, 23 I. & N. Dec. 467 (BIA 2002), the IJ found no evidence that Simon-Simon's removal would result in exceptional and extremely unusual hardship to his two U.S. citizen children, the stringent

3

standard he was required to meet.[2]  Both children were basically healthy.  Both children had

the capacity to improve on their Spanish language abilities.  As to the most serious allegation,

there was no evidence other than Simon-Simon's testimony that Isael's mother was unfit,

and, in fact, the Custody Order granted her liberal visitation rights.  Furthermore, although

the custody agreement prohibited Isael's removal from the United States without his mother's

consent, the IJ found that there was no evidence that she would prevent him from returning

to Guatemala with Simon-Simon.  The IJ also found that poor economic conditions in

Guatemala without more was insufficient to show exceptional and extremely unusual

hardship.  Moreover, Simon-Simon had extensive family in Guatemala, and there was no

evidence presented that he would be unable to find work there, given his skills.  The IJ

ordered him removed and granted him voluntary departure.

---

[2] Prior to the Illegal Immigration Reform and Immigrant Responsibility Act
("IIRIRA"), an alien could apply for suspension of deportation, where it was only
necessary to show "extreme hardship."  IIRIRA's standard of "exceptional and extremely
unusual hardship" is less generous than the former standard.  See Andazola-Rivas, 23 I. &
N. Dec. at 322; Gonzalez-Recinas, 23 I. & N. Dec. at 470.  In Monreal-Aguinaga, 23 I. &
N. Dec. 56, the Board found that, to establish "exceptional and extremely unusual
hardship," an alien must show that the qualifying relative would suffer hardship
substantially beyond that which would normally result from deportation.  The applicant
need not show that the hardship would be unconscionable.  The Board will consider "the
ages, health, and circumstances of qualifying ... relatives."  Id. at 63.  An applicant with
financially dependent elderly parents would have a strong case and so would an applicant
who had a qualifying child "with very serious health issues, or compelling special needs
in school."  Id.  However, a "lower standard of living or adverse country conditions in the
country of return ... generally will be insufficient."  Id.  The Board reaffirmed in
Gonzalez-Recinas, that the "exceptional and extremely unusual" requirement is "not so
restrictive that only a handful of applicants, such as those who have a qualifying relative
with a serious medical condition, will qualify for relief."  Id., 23 I. & N. Dec. at 470.

4

Simon-Simon appealed to the Board of Immigration Appeals. On September 27, 2007, the Board dismissed the appeal on the basis of the hardship issue, essentially for the reasons given by the IJ.[3] The Board acknowledged that removal would adversely affect Simon-Simon's children, but the children were in good health, he had numerous family members in Guatemala and work skills in the construction trade that would make him employable. Therefore, he could not show exceptional and extremely unusual hardship under Monreal-Aguinaga, Andazola-Rivas, and Gonzalez-Recinas. Simon-Simon has timely petitioned for review.

We will dismiss the petition for review for lack of subject matter jurisdiction. We have jurisdiction generally to review final orders of removal pursuant to INA § 242(a), 8 U.S.C. § 1252(a), but section 242(a)(2)(B)(i) of the jurisdictional statute, 8 U.S.C. § 1252(a)(2)(B)(i), divests us of jurisdiction over the Board's discretionary decisions regarding cancellation of removal under 8 U.S.C. § 1229b. See Mendez-Moranchel v. Ashcroft, 338 F.3d 176, 179 (3d Cir. 2003). To succeed on an application for cancellation of removal an alien must establish, among other things, that removal would result in "exceptional and extremely unusual hardship" to a qualifying relative. We held in Mendez-Moranchel that this determination is a "quintessential discretionary judgment." Id. The Board, in reliance upon the IJ's more comprehensive decision, affirmed the denial of Simon-Simon's application for

_____

[3]The Board did not decide the physical presence issue and therefore we need not reach it.

5

cancellation of removal based solely on a discretionary determination that he failed to establish that his removal would result in "exceptional and extremely unusual hardship" to his U.S. citizen children, see 8 U.S.C. § 1229b(b)(1)(D). This is an unreviewable decision.

Simon-Simon contends that the IJ did not weigh the evidence of exceptional and extremely unusual hardship properly, nor did it apply Monreal-Aguinaga properly. See Appellant's Brief, at 16. Specifically, the IJ ignored his testimony concerning incidents of neglect by Isael's mother and his assertion that his removal would put Isael at risk. Simon-Simon states: "The fact that Petitioner has been awarded sole residential custody of the child is clear evidence that the child would suffer exceptional and extremely unusual hardship if his father were removed from the United States." Id. at 17. Relying on Gonzalez-Recinas, 23 I. & N. Dec. 467, Simon-Simon contends that his circumstances – a divorced parent who is the sole source of financial and emotional support for a qualifying relative – must result in a discretionary grant of cancellation of removal. In his case, the Board erred in affirming the IJ without engaging in a de novo review of the facts.[4] In addition, the IJ failed to give appropriate consideration to dire economic conditions in Guatemala, as established by the Department of State's February 2008 Background Note for Guatemala, App. 122-130. Simon-Simon points out that the per capita income in Guatemala is only $4,317.00. This is

_____

[4]The correct standard is that, although the IJ's factual determinations in connection with a cancellation of removal application are reviewed for clear error, 8 C.F.R. § 1003.1(d)(3)(i), whether those facts support a finding of "exceptional and extremely unusual hardship" is a question of law which the Board reviews de novo, id. at § 1003.1(d)(3)(ii).

a far cry from what Simon-Simon was able to earn in the United States. See Appellant's Brief, at 18.

We do not agree that these contentions give us jurisdiction. The REAL ID Act amended INA § 242(a) to provide for jurisdiction in the courts of appeals to review constitutional claims and questions of law raised by aliens whose petitions for review would otherwise be outside our jurisdiction, see INA § 242(a)(2)(D), 8 U.S.C. § 1252(a)(2)(D); Sukwanputra v. Gonzales, 434 F.3d 627, 634 (3d Cir. 2006) (factual and discretionary determinations continue to fall outside our jurisdiction but 8 U.S.C. § 1252(a)(2)(D) would extend to question whether Board applied wrong legal standard in making discretionary determination); but Simon-Simon's disagreement with the weighing of the potential harm to Isael and the poor economic conditions in Guatemala is a traditional abuse of discretion challenge, and does not implicate the constitution or raise a legal issue.

We have carefully reviewed the evidence of record, which includes Simon-Simon's testimony and New Jersey Superior Court Judge DeSoto's August 31, 2004 order granting liberal visitation to Rosalinda Perez Garcia "as agreed by the parties," A.R. 157. The allegation that Isael will suffer abuse if Simon-Simon is removed from the United States obviously is a serious one, but the IJ weighed Simon-Simon's testimony that Isael's mother is unfit against the Custody Order granting liberal visitation as agreed by the parties, and did not misapply Board precedent in giving less weight to the testimony than to the Custody Order. As the IJ noted, Simon-Simon could have produced the complaint or transcripts from

7

the family court proceedings, or other independent evidence that Garcia Perez was not a fit parent, see Oral Decision of the Immigration Judge, at 7. Furthermore, there was no record evidence other than Simon-Simon's unsupported testimony that Isael's mother would even insist upon custody or refuse to consent to Isael's accompanying his father to Guatemala. Finally, the IJ did indeed consider the contention of reduced economic and educational opportunities in Guatemala, id. at 9, to the extent of the evidence presented.[5]

In sum, nothing in the IJ's decision indicates that he did not take into account the required factors to determine that Simon-Simon failed to establish "exceptional and extremely unusual hardship" to his United States citizen children. Gonzalez-Recinas involved a single mother with six children whose only family members resided in the United States. In contrast, Simon-Simon has three children he cares for, a partner who assists him physically and emotionally in raising the children, numerous relatives in Guatemala, cf. Andazola-Rivas, 23 I. & N. Dec. at 323 (noting fact that alien had no family to help her in Mexico, which would likely make her adjustment to new life there more difficult), and construction skills. We thus conclude that his quarrel is over the correctness of the factual findings and justification for the discretionary choices of the IJ and the Board, and we do not have jurisdiction to consider these arguments. 8 U.S.C. § 1252(a)(2)(B)(i); Mendez-Moranchel, 338 F.3d at 179.

---

[5]The 2008 Background Note, which appears in the Appendix on appeal, was not made a part of the Administrative Record.

8

For the foregoing reasons, we will dismiss the petition for review for lack of subject matter jurisdiction.